IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| TAYLOR BENOIST, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-02704-SHM-tmp |
| | ) | |
| TITAN MEDICAL MANUFACTURING, | ) | |
| LLC, | ) | JURY DEMANDED |
| | ) | |
|     Defendant. | ) | |
| | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART TITAN'S MOTION FOR SUMMARY JUDGMENT AND DENYING BENOIST'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Taylor Benoist ("Benoist") brings this workplace harassment and retaliation suit against Defendant Titan Medical Manufacturing, LLC ("Titan"). (D.E. No. 1.) Before the Court are four motions. The first is Titan's Motion for Summary Judgment. (D.E. No. 33.) Benoist responded on November 2, 2020. (D.E. No. 42.) Titan replied on November 16, 2020. (D.E. No. 48.) The second motion is Benoist's Motion for Summary Judgment on her retaliation claim. (D.E. No. 34.) The third and fourth motions are Benoist's corrections to her initial motion for partial summary judgment. (D.E. Nos. 35, 38.) Titan responded on November 23, 2020. (D.E. No. 49.) Benoist replied on December 2, 2020. (D.E. No. 52.) Titan's motion for summary judgment is GRANTED IN

PART and DENIED IN PART. Benoist's motion for partial summary judgment is DENIED.

## I.   BACKGROUND

Titan is a "family business" that has grown to employ more than 100 people since it was founded in 2009. (Def. Resp. to Pl.'s Statement of Undisp. Facts; D.E. No. 49-1 at 1102.) Members of the Kenyon family comprise much of Titan's management and leadership. (Id.) Jeff Kenyon, Sr. ("Kenyon") is the Chief Executive Officer's brother, formerly served as an owner and general manager, and served as a supervisor at times pertinent to this case. (Id.) Kenyon was in a serious relationship with Benoist's mother, Sheila Benoist. (Id. at 1103.)

In November 2017, Benoist began working for Titan. (Id.) At first, she enjoyed her job and maintained pleasant relationships with her coworkers. (Id.) She was "bubbly, cheery, and happy in the early days of her employment." (Id.)

Benoist lived with her significant other, Tyler Willis ("Willis"), when she began working at Titan. (Id.) In February 2018, Benoist and Willis moved in with Kenyon and Sheila Benoist. (Id.) Willis had been unemployed for at least a week as of February 28, 2018. (Id. at 1104.) Kenyon was bothered because Benoist supported Willis financially. (Id.)

On February 28, 2018, while they were at work on the shop floor at Titan, Kenyon confronted Benoist about Willis's

unemployment. (Id.) Benoist left the shop floor and went to her cubicle to avoid a personal conversation at work. (Id.) Kenyon followed her and continued the discussion. (Id. at 1105.) Benoist began to cry. (Id.) Kenyon asked Benoist to hug him, and she did. (Id.) After the hug, Kenyon continued discussing Benoist's financial support for Willis. (Id.)

General Manager Kyle Kenyon appeared during the discussion. (Id.) He saw Benoist crying. (Id.) He left. (Id.)

Benoist turned away from Kenyon to face her work computer, hoping he would walk away. (Id.) Instead, Kenyon "grabbed [Benoist] by both sides of her face, bent down, forcibly turned her away from her computer towards him, and kissed her on the mouth." (Id. at 1106.) The kiss lasted about eight seconds. (Id. at 1107.)

After going to the restroom to cry and attempt to collect herself, Benoist went to Brad Guthrie's ("Guthrie") office to report the kiss. (Id.) Guthrie was Benoist's supervisor. (D.E. No. 42-1 at 982.) Guthrie described Benoist as "teary-eyed and sobbing the whole time." (D.E. No. 49-1 at 1108.)

Benoist had reported other incidents of Kenyon's inappropriate behavior to Guthrie. (Id.) That behavior included text messages that referred to Benoist's "hot body," that said Kenyon would show Benoist what it was like to have sex with a real man, that he wished she would drop her towel when she got

3

out of the shower, and that he was well-endowed. (D.E. No. 42-1 at 999.) Those text messages began about one to two years before Benoist started working at Titan, continued while she was working at Titan, and occurred once or twice a month. (Id.) Benoist asked Kenyon to stop sending the text messages, but he continued to send them. (Id. at 999-1000.) Neither Benoist nor Kenyon produced any text messages. (Id.) Benoist also reported Kenyon more than once for making a sound that she interpreted as sexual while she worked at Titan. (Id. at 1000.)

On February 28, 2018, on a break at 9:00 AM, after her report to Guthrie, Benoist got into Cameron Smith's ("Smith") truck and called Willis. (D.E. No. 42-1 at 989.) She told Willis about the kiss, and Willis began packing their belongings to move out of Kenyon's home. (Id.) While on that break, Benoist also discussed the kiss with Smith. (D.E. No. 61 at 1333.)

After the telephone call to Willis, Benoist went to Titan Chief Operating Officer Colby Kenyon's office to report the kiss. (D.E. No. 49-1 at 1108.) Kyle Kenyon was present. (Id.) Guthrie had already reported the kiss to Colby Kenyon. (Id.)

Kenyon was called into a meeting with Titan Chief Executive Officer Robert Kenyon. (Id. at 1109.) Kenyon testified that during that meeting he "got mad" and felt "dirty" after learning that Benoist had reported the kiss. (Id.) While still in the meeting, Kenyon left Benoist a voicemail message. (Id. at 1110.)

4

In the message, Kenyon says, "I kissed you on the side of the mouth," and "You and that boy can pack your shit and head to Aberdeen." (Id.) Kenyon was not reprimanded for leaving the voicemail message. (Id. at 1112.)

Titan investigated the kiss during the first week of March 2018. (Id. at 1113.) Robert Kenyon, Colby Kenyon, Donna Kenyon, and Cheryl Estel participated in the investigation. (Id.) Security footage of the kiss was reviewed and written statements were taken from Benoist, Kenyon, Colby Kenyon, and Smith. (D.E. No. 42-1 at 995-96.) The investigation found that Kenyon and Benoist were discussing family matters at work and distracted other employees by discussing the kiss with them. (Id. at 1114-15.) Titan concluded that there was no sexual harassment because it considered Benoist to be Kenyon's stepdaughter. (Id. at 1115.)

Benoist was reprimanded on March 7, 2018, for distracting other employees during work by discussing "the incident." (Id. at 1115-16.) She received a warning that was labeled an "oral warning" for discussing the kiss with Guthrie, Colby Kenyon, and Smith. (Id. at 1116; D.E. No. 61 at 1339-40; D.E. No. 38-17.) Although it is labeled an "oral warning," (D.E. No. 38-17), Titan does not dispute Benoist's characterization of the warning, which was presented in writing, as a "formal written reprimand," (See D.E. No. 49-1 at 1115.)

Kenyon was also reprimanded for discussing "the incident" and so distracting coworkers. (D.E. No. 42-1 at 996; D.E. No. 49-1 at 1116.)

The meaning of "the incident" is disputed. Benoist says that "the incident" refers only to the kiss. Titan says that "the incident" refers to the whole course of conduct between Kenyon and Benoist on February 28, 2018. (D.E. No. 49-1 at 1116; D.E. No. 61 at 1340.)

Benoist was treated differently by her coworkers after she reported the kiss to Titan's management. (D.E. No. 49-1 at 1117-18.) Her coworkers' demeanor became hostile, and they avoided her. (Id.) Benoist began to feel like an outsider who was not welcome at Titan. (Id. at 1118.)

Benoist heard a rumor from several of her coworkers that Titan's management had held a meeting where employees were instructed not to talk to Benoist. (Id. at 1117.) Titan's management and others testified that there was no meeting. (Id.)

In late March 2018, Benoist sought professional psychological help at Parkwood Behavioral Health. (Id. at 1119.) Her documented reasons for admission were the kiss and the changes in her work environment. (Id.)

On April 9, 2018, Benoist submitted a resignation letter to Titan. (Id.)

Benoist filed her complaint against Titan on October 16, 2019. (D.E. No. 1.) She asserts four claims: sex discrimination, sexual harassment, constructive discharge, and retaliation, all in violation of Title VII, 42 U.S.C. §§ 2000e, et seq. ("Title VII"). (Id. ¶¶ 20, 25-40.)

On October 26, 2020, Titan filed its motion for summary judgment. (D.E. No. 33.) Titan argues that the sex discrimination claim fails because Benoist was not subjected to an adverse employment action and was not treated less favorably than someone outside her protected class. (Id. at 83.) It argues that the sexual harassment claim fails because Benoist cannot show that the kiss was sufficiently severe or pervasive to alter the conditions of her employment, and that she cannot show that Titan tolerated the alleged harassment or failed to take remedial action. (Id. at 83-84.) Titan argues that the constructive discharge claim fails because Benoist cannot show that the alleged harassment and retaliation were so severe that under an objective or subjective standard the workplace had become hostile or abusive. (Id. at 84.) It argues Benoist's retaliation claim fails because she cannot show that any retaliation was a materially adverse action or that any retaliation was sufficiently severe to dissuade a reasonable worker from engaging in protected activity. (Id.)

On October 26, 2020, Benoist filed a motion for partial summary judgment on her retaliation claim. (D.E. No. 34.) Benoist filed corrections to that motion on October 26, 2020, and October 29, 2020. (D.E. Nos. 35, 38.) Benoist argues that she has established a _prima facie_ case of retaliation and that Titan cannot provide a legitimate, non-discriminatory reason for its adverse actions. (D.E. No. 38 at 701.)

## II.  JURISDICTION

Benoist's claims arise under Title VII. (See D.E. No. 1.) The Court has subject matter jurisdiction over Title VII claims under the general grant of federal question jurisdiction in 28 U.S.C. § 1331.

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[T]he moving party is entitled to summary judgment when the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" George v. Youngstown State University, 966 F.3d 446, 458 (6th Cir. 2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).

The non-moving party has the duty to point out specific evidence in the record sufficient to justify a jury decision in her favor. See Fed.R.Civ.P. 56(c)(1); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). When confronted with a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed.R.Civ.P. 56(c). A genuine dispute for trial exists if the evidence is "'such that a reasonable jury could return a verdict for the nonmoving party.'" See Wasek v. Arrow Energy Servs., 682 F.3d 463, 467 (6th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "[I]n order to survive a summary judgment motion, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir. 2018) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

The standard remains the same when both parties move for summary judgment. Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). "When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." Wiley v. United States, 20 F.3d 222, 224 (6th Cir. 1994) (citing Taft, 929 F.2d at 248).

## IV.   ANALYSIS

### A.   Sex Discrimination

Titan argues that Benoist cannot establish that she was subjected to an adverse employment action, (D.E. No. 33-2 at 100), which is an element of a prima facie case of sex discrimination under the McDonnell Douglas framework for proof of sex discrimination by circumstantial evidence. Perry v. McGinnis, 209 F.3d 597, 601 (6th Cir. 2000); see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

Titan disciplined Benoist, but "discipline, whether warranted or not, do[es] not constitute a material adverse change in the terms of employment in the discrimination context because those actions do not 'constitute[] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Lee v. Cleveland Clinic Found., 676 F. App'x 488, 494 (6th Cir. 2017)

(quoting White v. Baxter Healthcare Corp., 533 F.3d 381, 402 (6th Cir. 2008)).

Benoist does not argue in her response that she has established a prima facie case of sex discrimination. (See D.E. No. 42.) She has not because she cannot demonstrate the adverse employment action element. Titan's motion for summary judgment on Benoist's sex discrimination claim is GRANTED. The sex discrimination claim is DISMISSED.

## B.  Sexual Harassment

Titan argues that Benoist has not demonstrated that Titan is liable for sexual harassment, which is an element of a prima facie case of a hostile-work-environment sexual harassment claim. (D.E. No. 33-2 at 106-08); Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 733 (6th Cir. 2006) (citing Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir. 1999)).

There are two ways to establish liability on a hostile-work-environment sexual harassment claim. Wierengo v. Akal Sec., Inc., 580 F. App'x 364, 371 (6th Cir. 2014). Liability can be based on "a supervisor's participation in the harassment or the employer's negligence in discovering and remedying coworker harassment." Id.

Benoist argues that there is a genuine dispute of material fact about whether Kenyon was in her chain-of-command. (D.E. No. 42 at 971.) There is not. Benoist argues that the record does

not establish whether Kenyon was in her chain-of-command. (Id. at 970.) In her deposition, human resources manager Cheryl Estel testified that Kenyon was not Benoist's supervisor. (D.E. No. 33-5 at 161.) Benoist asserts that Estel's testimony does not establish that Kenyon, who was a supervisor at Titan, fell outside her chain-of-command. (D.E. No. 61 at 1326.)  There is further evidence in the record establishing that Kenyon was not in Benoist's chain of command. Benoist admitted for purposes of summary judgment that Guthrie was her direct supervisor. (D.E. No. 42-1 at 982.) Guthrie testified that he reported directly to Chief Operating Officer Colby Kenyon. (D.E. No. 33-3 at 118.) Kenyon was not in Benoist's chain-of-command.

Benoist argues that, because of Kenyon's family relationships to the management at Titan and his past leadership roles at Titan, Kenyon had the ability to influence tangible employment actions against her. (D.E. No. 42 at 970-71.) Influence does not make a coworker a supervisor. Equal Employment Opportunity Comm'n v. AutoZone, Inc., 692 F. App'x 280, 283 (6th Cir. 2017) ("[Harasser's] ability to influence [the victims' supervisor] does not suffice to turn [the harasser] into his victims' supervisor."). Kenyon was not Benoist's supervisor.

Kenyon was Benoist's coworker. To establish Titan's liability for a hostile work environment, Benoist must demonstrate that Titan did not respond to her reports in a way

"reasonably calculated to end the harassment." Waldo v. Consumers Energy Co., 726 F.3d 802, 814 (6th Cir. 2013). "[R]easonably appropriate corrective action may include promptly initiating an investigation to determine the factual basis for the complaint, speaking with the specific individuals identified by [the complainant], following up with [the complainant] regarding whether the harassment was continuing, and reporting the harassment to others in management." Id. (internal quotations omitted and alterations in original).

Titan's actions were reasonably calculated to end the harassment. The kiss was reported on February 28, 2018, and the investigation occurred during the first week of March 2018. Titan took written statements not only from Kenyon, but also from Benoist and those with whom Benoist had spoken about the kiss. By the time Benoist reported the kiss to Colby Kenyon, Guthrie had already discussed the kiss with him. Although Guthrie did not act on Benoist's reports of inappropriate text messages and noises, Benoist had asked him not to act. (D.E. No. 48 at 1064.) Benoist testified that she did not experience any further harassment after the kiss. (D.E. No. 42-1 at 995.) Titan responded in a manner reasonably calculated to end the harassment after Benoist's reports. It is not liable for any hostile-work-environment harassment by Benoist's coworker Kenyon.

Benoist cannot establish that Titan is liable for sexual harassment. Titan's motion for summary judgment on the sexual harassment claim is GRANTED. The sexual harassment claim is DISMISSED.

## C.  Constructive Discharge

Although Benoist appears to assert constructive discharge only as an example of retaliation, Titan responds to constructive discharge as an independent claim. The Court will treat it as an independent claim.

To state a claim of constructive discharge, Benoist must show that Titan "deliberately created intolerable working conditions, as perceived by a reasonable person," and that it did so "with the intention of forcing [her] to quit." Logan v. Denny's, Inc., 259 F.3d 558, 568-69 (6th Cir. 2001) (internal quotations omitted). "[I]ntolerability is a demanding standard." Tchankpa v. Ascena Retail Group, Inc., 951 F.3d 805, 814 (6th Cir. 2020). "[D]emotion, reduction in salary, badgering, harassment, humiliation, and sexual assault suggest an objectively intolerable workplace." Id. The intolerable work environment must be "so severe or pervasive that a reasonable person would find the work environment hostile or abusive, and the victim must subjectively regard that environment as hostile or abusive." Calabrace v. Potter, No. 3:04-0567, 2006 WL 1638765, at *12 (M.D. Tenn. June 8, 2006).

Benoist fails to meet the demanding standard of intolerability. She experienced no demotion, reduction in salary, or other changes to her duties, her supervisor, or her hours of work. (D.E. No. 42-1 at 992.) She had no further conversations with nor did she experience further unwanted sexual behavior from Kenyon. (Id. at 995.) Although Benoist experienced unwelcome changes in her formerly pleasant interactions with her coworkers, Benoist herself was more reserved and withdrawn when she returned to work after the kiss. (Id. at 993-94.) No coworker was rude or abusive. There was no constructive discharge.

Benoist has not established that there was a constructive discharge. Titan's motion for summary judgment on any constructive discharge claim is GRANTED. Any constructive discharge claim is DISMISSED.

### D.   Retaliation

Benoist "may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a prima facie case under the McDonnell Douglas framework." Abbott v. Crown Motor Co., 348 F.3d 537, 542 (6th Cir. 2003). "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful retaliation was a motivating factor in the employer's action." Id. To establish a prima facie case, Benoist must prove that: "(1) she engaged in a protected activity; (2) her exercise of such protected activity was known

by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." Rogers v. Henry Ford Health System, 897 F.3d 763, 775 (6th Cir. 2018) (citing Laster v. City of Kalamazoo, 746 F.3d 714, 730 (6th Cir. 2014)).

A claim for Title VII retaliation follows the same burden shifting framework as a claim for Title VII discrimination. See id. at 792-93. If Benoist proves her prima facie case, the burden shifts to Titan to demonstrate that there was a legitimate, nondiscriminatory reason for its actions. Id. at 793. If Titan can make that showing, the burden shifts back to Benoist to demonstrate that Titan's proffered reason was not the true reason for the employment decision. Id.

The dispute here turns primarily on the third element of Benoist's prima facie case. Titan raises no issue about the first, second, or fourth elements. Titan does not attempt to establish that there was a nondiscriminatory reason for its actions. Its defense focuses solely on establishing that its actions were not materially adverse actions. (See D.E. No. 33-2 at 109-112; D.E. No. 49 at 1094-99.)

The adverse action standard for retaliation differs from the adverse employment action standard for a discrimination claim. Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53,

16

67 (2006) ("[W]e conclude that Title VII's substantive provision and its antiretaliation provision are not coterminous. The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."); Laster, 746 F.3d at 719 ("The 'materially adverse action' element of a Title VII retaliation claim is substantially different from the 'adverse employment action' element of a Title VII . . . discrimination claim."). Under the antiretaliation standard, Benoist must show "that the employer's actions [were] harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N., 548 U.S. at 57.

Benoist cites four actions by Titan that she claims were materially adverse actions in retaliation for her protected conduct of reporting sexual harassment. She cites her constructive discharge and a meeting where Titan instructed employees not to speak to her in her response to Titan's motion for summary judgment on the retaliation claim. She cites Kenyon's voicemail and Titan's warning in her response to Titan's motion and in support of her own motion for partial summary judgment.

### 1.   Titan's Motion for Summary Judgment

#### a.   Constructive Discharge

Benoist cites constructive discharge as an example of retaliation in response to Titan's motion for summary judgment.

Because there was no constructive discharge, supra, constructive discharge could not be retaliatory.

### b.   Work Environment Changes

Benoist cites changes to her work environment, specifically how she was treated by her coworkers, as a retaliatory act. She says there was a meeting among Titan staff where staff were instructed by management not to speak to her.

Benoist fails to create a genuine dispute about whether such a meeting occurred. She cites second-hand statements from several Titan employees who told her about the meeting. (D.E. No. 38-2.) Those statements can be considered only for the impact they had on Benoist's experience of her work environment. See Paasewe v. Action Group, Inc., 530 F. App'x 412, 414 n.5 (6th Cir. 2013) ("To the extent Seitz's statement that the co-worker relayed to Paasewe bears on the issue whether the work environment would reasonably have been perceived, and was perceived, as hostile or abusive, the statement is not being offered for the truth of the matter asserted and thus is not inadmissible hearsay."). Benoist says the statements are not offered to demonstrate the truth about whether the meeting occurred. (D.E. No. 52 at 1260) ("Paragraph 66 is not being offered for the truth of the matter asserted; rather, it reflects her basis for perceiving the workplace as hostile and abusive."). Titan cites management and non-management witnesses who

testified that there was no meeting. (D.E. No. 42-1 at 995.) Considering the facts in the light most favorable to Benoist, there was a rumor about a meeting that never occurred, which negatively affected her experience of her work environment.

A rumor about a meeting that never occurred and the different treatment by her coworkers that Benoist experienced fail to establish a materially adverse action. Burlington N., 548 U.S. at 68 ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."); Creggett v. Jefferson Cty. Bd. of Educ., 491 F. App'x 561, 569, 2012 WL 3104508, at *6 (Table) (6th Cir. Aug. 1, 2012) ("[Plaintiff's] perception that [a coworker] shunned and avoided him is not a materially adverse action.").

### c.   Kenyon's Voicemail

Kenyon left Benoist an angry voicemail demanding that she and Willis move out of Kenyon's home. Kenyon testified that he left the voicemail because Benoist had reported him for sexual harassment. (D.E. No. 49-1 at 1111.) Because Kenyon was Benoist's coworker, his voicemail must be analyzed as coworker retaliation. (See D.E. No. 49 at 1095.) An employer is liable for coworker retaliation where:

> (1) the coworker's retaliatory conduct is sufficiently severe so as to dissuade a reasonable worker from making or supporting a charge of discrimination, (2)

supervisors or members of management have actual or constructive knowledge of the coworker's retaliatory behavior, and (3) supervisors or members of management have condoned, tolerated, or encouraged the acts of retaliation, or have responded to the plaintiff's complaints so inadequately that the response manifests indifference or unreasonableness under the circumstances.

Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 347 (6th Cir. 2008).

Benoist has established the second and third elements of coworker retaliation based on Kenyon's voicemail. The voicemail was left while Kenyon was with his brother, Titan's Chief Executive Officer Robert Kenyon. (D.E. No. 49-1 at 1110.) No effort was made to stop Kenyon from leaving the voicemail, and Titan has not reprimanded him for it. (Id. at 1111-12.)

Titan argues that the voicemail was not sufficiently severe to dissuade a reasonable worker from reporting harassment. (D.E. No. 49 at 1095-96.) Titan argues that the threat was mooted because Benoist had decided to move out of Kenyon's home before Kenyon demanded that Benoist and Willis move. (See id.)

Although there may have been no direct injury from the eviction because Benoist had decided to move, threats of disruptions to a plaintiff's home life can be sufficiently severe that a reasonable jury could find that the threats were dissuading. See Ryan v. Shulkin, No. 1:15-CV-02384, 2017 WL 6270209, at *11 (N.D. Ohio Dec. 8, 2017) ("[C]oworker . . .

20

called [plaintiff] at home and threatened . . . [to] come to [plaintiff's] house and beat her up."). Kenyon's voicemail presents a question for the jury as to whether it was sufficiently severe to constitute coworker retaliation.

### d.   The Warning

Benoist cites the warning she received on March 7, 2018, as direct evidence of retaliation. (D.E. No. 38-1 at 715.) "[Benoist's] tendered evidence is not direct because, even if it were believed, it would not require the conclusion that defendant unlawfully retaliated against plaintiff; rather, one could draw that conclusion only by making a series of inferences arising from plaintiff's evidence." Abbott, 348 F.3d at 542. Benoist must establish a prima facie case that the warning was retaliatory. Id.

The dispute about whether a warning is retaliatory focuses on whether the warning was a materially adverse action. Titan cites Lee and Creggett to demonstrate that the warning cannot be an adverse action. The cited portions of those cases are inapposite. They discuss adverse employment action in a discrimination, rather than a retaliation, context. See Lee, 676 F. App'x at 494; Creggett, 491 F. App'x at 566.

Benoist cites Taylor v. Geithner, 703 F.3d 328, 338 (6th Cir. 2013), to demonstrate that written warnings can be materially adverse actions. There, the court said that "certain

written reprimands could rise to the level of an adverse employment action."[1] Id.

Titan says that Taylor supports its position. The court in Taylor decided that the written reprimands at issue were not materially adverse actions[2] because "[t]here [was] not evidence in the record that any disciplinary action resulted from these letters, or that these letter were related to a larger pattern of intimidation by constantly reprimanding [plaintiff], for example." Id.

The warning issued to Benoist differs from the warnings in Taylor. Neither of the reprimands in Taylor was for discussing an incident of harassment with the appropriate management staff. Id. (breaking the chain of command and use of a cell phone in the work area). There is no indication in Taylor that termination could have been the next step for further violations. Id. ("Each of these documents warned that further incidents of this nature

---

[1] Although Taylor is a retaliation case, the court there uses the term "adverse employment action" to describe what this Court calls a "materially adverse action," based on Laster. The Taylor court does not always distinguish between the two. It cites Creggett, a discrimination case, for Creggett's holding that written reprimands, without "materially adverse consequences such as lowered pay, demotion, suspension, or the like, [are] not [] materially adverse employment action[s]." Taylor, 703 F.3d at 338. That is the standard for an adverse employment action in a discrimination context. Cf. Burlington N., 548 U.S. at 67 ("The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm.").)

[2] The Taylor court uses different terminology.

could lead to disciplinary action."). The warning issued to Benoist was for discussing the kiss with Guthrie and Colby Kenyon. That warning says that termination could be the result of further infractions. (D.E. No. 38-17.) Taylor does not dictate the outcome for either party.

Benoist cites Fletcher v. U.S. Renal Care, Inc., 240 F. Supp. 3d 740, 752 (S.D. Ohio 2017), in which the court decided that a final written warning could be a materially adverse action. Titan attempts to distinguish the warning issued to Benoist because it was not a final warning. (D.E. No. 49 at 1097.) Benoist contends that, because termination is listed as a possible next step, Titan's warning should be considered a final warning. (D.E. No. 52 at 1258-59.) Titan also argues that the warning in Fletcher was more severe because it was for performance issues. (D.E. No. 49 at 1097.) Benoist responds that her warning was more severe because, unlike a warning for performance issues, her warning was issued for engaging in protected conduct by reporting the harassment she experienced. (D.E. No. 52 at 1259.)

Benoist's argument that her warning for engaging in protected conduct is more likely to dissuade a reasonable employee from reporting harassment is persuasive. Her warning was at least as dissuading as the warning in Fletcher, where the

court decided that the plaintiff had created an issue of fact
for the jury. <u>Fletcher</u>, 240 F. Supp. 3d at 752.

Benoist has established that there is an issue for the jury
on her retaliation claim based on Kenyon's voicemail and Titan's
warning. Titan's motion for summary judgment on the retaliation
claim is DENIED.

### 2.   **Benoist's Motion for Partial Summary Judgment**

Benoist has established a genuine dispute of material fact
about whether the voicemail and the warning were retaliatory
conduct that constitute materially adverse actions, but she has
not demonstrated that she is entitled to partial summary
judgment. Benoist has not established that she was retaliated
against as a matter of law. She cites no case where substantially
similar conduct entitled a plaintiff to summary judgment. <u>See</u>
<u>Fletcher</u>, 240 F. Supp. 3d at 752 (Fletcher created at least a
genuine issue of fact about whether he was subjected to a
materially adverse action). Whether the voicemail and the warning
would dissuade are questions for the jury.

Benoist's motion for summary judgment on the retaliation
claim is DENIED.

## V.   **CONCLUSION**

Titan's motion for summary judgment is GRANTED IN PART and
DENIED IN PART. The motion is GRANTED on the sex discrimination,
sexual harassment, and constructive discharge claims. Those

claims are DISMISSED. Titan's motion for summary judgment on the retaliation claim is DENIED.

Benoist's motion for summary judgment on the retaliation claim is DENIED.

SO ORDERED this 15th day of June, 2021.

*/s/ Samuel H. Mays, Jr.*

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE