```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
```

| | |
|---|---|
| **TAYLOR BENOIST,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )    No. 2:19-cv-02704-SHM |
| | ) |
| **TITAN MEDICAL MANUFACTURING, LLC,** | ) |
| | ) |
|     **Defendant.** | ) |
| | ) |

## ORDER

On August 4, 2021, Plaintiff Taylor Benoist filed Plaintiff's Motion for Payment of Attorney's Fees (the "Motion"). (D.E. No. 113.) On August 13, 2021, Defendant Titan Medical Manufacturing, LLC responded. (D.E. No. 118.) The Motion is **GRANTED IN PART.**

### I. Background

Both Plaintiff and Defendant vigorously litigated this case. Plaintiff filed her Complaint on October 16, 2019, alleging "Discrimination and Sexual Harassment in Violation of Title VII," "Retaliation in Violation of Title VII," and constructive discharge. (D.E. No. 1 at 5-6.) Defendant filed an Answer denying liability and raising affirmative defenses. (D.E. No. 8.)

1

Both parties served and answered interrogatories and document requests. Defendant took three depositions. Plaintiff took eight. Defendant filed a Motion for Summary Judgment. (D.E. No. 33.) Plaintiff filed a Motion for Partial Summary Judgment on Plaintiff's Retaliation Claim. (D.E. No. 34.) The Court entered an Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment and Denying Plaintiff's Motion for Partial Summary Judgment. (D.E. No. 66.) The Court dismissed Plaintiff's claims of sex discrimination, sexual harassment, and constructive discharge. (Id. at 10-19.) The Court denied Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim. (Id. at 19-24.) Plaintiff filed a Motion for Reconsideration (D.E. No. 67), which the Court denied. (D.E. No. 76.)

Trial commenced on July 12, 2021, and concluded on July 16, 2021. Before trial, Plaintiff had received settlement offers of up to $15,000. Plaintiff's counsel, Brian C. Winfrey, asked the jury to award a total of $1,000,000 in compensatory and punitive damages. The jury rendered a verdict in favor of Plaintiff and awarded a total of $500,000 in compensatory and punitive damages. (D.E. No. 105.) Defendant filed a Motion to Impose Statutory Cap. (D.E. No. 107.) The Court granted Defendant's Motion to Impose Statutory Cap and reduced the jury's verdict to $50,000. (D.E. No. 115.)

Plaintiff has now filed a Motion for Attorney's Fees. (D.E. No. 113.) The Motion includes a Memorandum of Law, Winfrey's Declaration, a Billing Statement, declarations from two Memphis attorneys, and two prior fee awards. Plaintiff requests $285,237.50 in fees for Winfrey based on an hourly rate of $475 and 612.5 billed hours. (D.E. No. 113-2.) The billed hours include 24.0 travel hours. Winfrey billed $237.50 an hour for travel hours, half the rate he billed for work hours. Defendant responds that Winfrey's hourly rate is too high and that the time billed should be reduced because Winfrey used block billing and made impermissible billing entries. (D.E. No. 118.)

**II.  Standards**

The court may award reasonable attorney's fees to a party that prevails in a Title VII action. See 42 U.S.C. § 2000e-5(k). To determine reasonable attorney's fees, the court calculates "the fee applicant's lodestar, which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate." Hubbell v. FedEx SmartPost, Inc., 933 F.3d 558, 575 (6th Cir. 2019). "There is a 'strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a reasonable fee.'" Barrow v. City of Cleveland, 773 F. App'x 254, 268 (6th Cir. 2019) (quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986)).  Upward

3

adjustments to the lodestar are permissible in certain rare and exceptional cases. See Delaware Valley, 478 U.S. at 564; Blum v. Stenson, 465 U.S. 886, 898-900 (1984); Geier v. Sundquist, 372 F.3d 784, 793 (6th Cir. 2004).

To determine the "reasonable hourly rate" component of the lodestar calculation, the court assesses the "prevailing market rate in the relevant community." See Waldo v. Consumers Energy Co., 726 F.3d 802, 822 (6th Cir. 2013)(emphasis omitted). "The prevailing market rate is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." Id. (internal quotations omitted). The court is "permitted to rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." Id. at 821-22 (internal quotations omitted).

To determine the number of reasonable hours for the lodestar calculation, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." Wooldridge v. Marlene Indus. Corp., 898 F.2d 1169, 1177 (6th Cir. 1990) (abrogated on other grounds Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources, 532 U.S. 598 (2001)). The court excludes hours that were "excessive,

4

redundant, or otherwise unnecessary." See Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." Id. Time entries must be detailed enough to allow the court to evaluate their reasonableness. See id. at 437 & n.12; Moore v. Freeman, 355 F.3d 558, 566 (6th Cir. 2004). If the fee applicant presents an inadequate documentation of hours, the court "may reduce the award accordingly." Hensley, 461 U.S. at 433; Imwalle v. Reliance Med. Prod., Inc., 515 F.3d 531, 552 (6th Cir. 2008).

**III. Analysis**

    **A.   Reasonable Hourly Rate**

Plaintiff's Motion is supported by declarations from William B. Ryan and Robert L. J. Spence, Jr., two respected Memphis attorneys. Ryan states that a $475 hourly rate was reasonable for "top flight trial attorneys in the Western District of Tennessee" and that his own hourly rate in employment cases "ranges from $350-450 per hour depending on the complexity of the matter/case." (D.E. No. 113-6 at 3.) Ryan has been licensed to practice in Tennessee for twenty-two (22) years. (Id. at 1.) Spence states that Winfrey's hourly rate was reasonable and that "rates for this type of work for experienced lawyers range from $350 to $550 depending on the complexity of the matter and the skill involved." (D.E. No. 113-5 at 4, 5.)

5

Spence has been licensed to practice in Tennessee for thirty-five (35) years. (Id. at 1.) Plaintiff has also provided two recent cases in which the awarding courts found Winfrey's $475 hourly rate reasonable. (D.E. No. 113-7; 113-8); see Peterson v. W. TN Expediting, Inc., No. 1:18-CV-01164, (W.D. Tenn. June 16, 2021); Hanson v. McBride, No. 3:18-cv-00524 (M.D. Tenn. Oct. 2, 2020).

Defendant argues that $375 is a reasonable hourly rate for Winfrey's work. (D.E. No. 118 at 8.) Defendant argues that Winfrey has been licensed for fifteen (15) years and cannot command the upper end of the rates quoted by Ryan and Spence. (Id. at 6-7.) Defendant cites recent cases in which the awarding court approved hourly rates for Ryan and Spence on the low end of their quoted ranges. (Id.) Defendant argues that the Peterson award Plaintiff submitted covers Winfrey's appellate work. (Id. at 7-8.) The same court found $400 was a reasonable hourly rate for Winfrey's work through trial. See Peterson v. W. TN Expediting, Inc., No. 1:18-CV-01164 (W.D. Tenn. June 26, 2020). Defendant argues that the Hanson award is from the Middle District of Tennessee, where attorneys charge higher hourly rates. (D.E. No. 118 at 7.) Defendant contends that the present case involved straightforward discrimination and retaliation claims that do not warrant a $475 hourly rate. (Id. at 15.)

6

The Court finds that $400 is a reasonable hourly rate for Winfrey's work in this case. The ranges that Ryan and Spence quoted for experienced attorneys are appropriate guideposts. Although Winfrey has only practiced for fifteen (15) years, his Declaration demonstrates specialized experience and training. Winfrey has clerked for the National Labor Relations Board and the Equal Employment Opportunity Commission, served as Trial Counsel for the United States Department of Labor, and practiced continually in the employment litigation field. (D.E. No. 113-4.) The Court selects the approximate midpoint within the quoted ranges. The present case involved straightforward claims, but was complicated by parties and witnesses with close personal and family ties. A $400 hourly rate matches the rate Winfrey received for his trial work in the first Peterson award. The Hanson award is not evidence of the prevailing market rate in this venue.

Winfrey argues that his $475 hourly rate is reasonable because he "handled all attorney work for Ms. Benoist alone and without the assistance of co-counsel," although noting that "[a]s a Member at a large national law firm, [he] certainly could have retained co-counsel." (D.E. No. 113-4 at 5.) That argument is not persuasive. Work that could be performed by an associate or paralegal does not command partner-level rates. See Hubbell v. FedEx Smartpost, Inc., No. 14-13897, 2018 WL 1392668, at *3 (E.D. Mich. Mar. 20, 2018), aff'd, 933 F.3d 558 (6th Cir. 2019); Mendez

7

v. FedEx Express, No. 15-CV-12301, 2017 WL 168168, at *3 (E.D. Mich. Jan. 17, 2017). Winfrey billed for tasks that an associate or paralegal could have performed. For example, his Billing Statement contains entries such as "create preliminary timeline of events," "organizing exhibits for deposition discussions," and "[r]esearch Burlington and other case law on issues and elements of retaliation claim." (D.E. No. 113-2.) Rather than exclude those entries and similar entries from Winfrey's billed hours, the Court has considered the nature of Winfrey's work in its selection of a reasonable hourly rate.

### B.  Number of Hours Reasonably Expended

Defendant requests an across-the-board reduction in the requested fees because Winfrey's use of block billing "makes it difficult to determine with a high degree of certainty exactly how much time was spent performing many tasks, whether the tasks were necessary for the litigation, and whether the hours billed were expended in a reasonable fashion." (D.E. No. 118 at 8.) Defendant also identifies specific entries and contends that they were "excessive/unreasonable" or represent "paralegal, clerical or non-billable work." (Id. at 11-14.) Plaintiff argues that Winfrey's Billing Statement is "specific and detailed [and] largely avoids block billing . . . ." (D.E. No. 113-1 at 9.) In his Declaration, Winfrey says that he "cut from billing entries for all tasks performed that were even arguably unnecessary,

8

clerical, or unnecessarily duplicative before submitting [his fees] to the Court." (D.E. No. 113-4 at 5).

Block billing refers to a time-keeping method where a lawyer "enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Oakley v. City of Memphis, No. 06-2276, 2012 WL 2682755, at *3 (W.D. Tenn. June 14, 2012), report and recommendation adopted, No. 06-2276, 2012 WL 2681822 (W.D. Tenn. July 6, 2012), aff'd, 566 F. App'x 425 (6th Cir. 2014). Block billing alone does not require the court to reduce a fee award, although the practice is generally discouraged. See id. A court may reduce fees where block-billed entries include non-compensable tasks. See Miller v. Davis, 267 F. Supp. 3d 961, 996–97 (E.D. Ky. 2017), aff'd sub nom. Miller v. Caudill, 936 F.3d 442 (6th Cir. 2019); see also Hensley, 461 U.S. at 433-34 (finding that the district court may reduce fees where documentation was inadequate and where hours were not reasonably expended). Clerical tasks are non-compensable. See Miller, 267 F. Supp. 3d at 996 (citing Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989)). Clerical tasks include converting documents, circulating documents, calendaring matters, and filing motions. See Adkins v. Comm'r of Soc. Sec., 393 F. Supp. 3d 713, 720 (N.D. Ohio 2019); Miller, 267 F. Supp. 3d at 996-97.

Winfrey's block billing warrants a five percent (5%) reduction to his work hours. Winfrey did not enter total daily time entries. He did group related tasks into single entries instead of itemizing. For example, Winfrey's Billing Statement contains five entries listed for July 27, 2021, two of which are reproduced below:

| | | |
|---|---|---|
| 7.27.2021 | Conferral with William Ryan and Robert Spence Re: Gather and email items for Declaration for fee award; submission of billing entries, memorandum, and declaration for review | 0.5 |
| 7.27.2021 | Review hundreds of pages of documents submitted by Titan in support of Statutory Damages Cap Motion; indexing documents for reference; and evaluating claims of Titan (3.5); Research cases Re: Evidence for statutory caps and burden of proof on issue | 4.5 |

(D.E. No. 113-2 at 17). The first entry shows no itemization. It is not clear how much time Winfrey spent conferring with Ryan and Spence and how much time he spent on the "submission" of fee award materials. The second entry shows some itemization, represented by time within parentheses, but tasks are grouped. It is not clear how much time Winfrey spent reviewing, indexing, or evaluating Titan documents. Both entries include clerical tasks, specifically "submission of billing entries, memorandum, and declaration" and "indexing documents." The entries are representative of other entries that are block-billed and that also include non-compensable tasks. Because the Court cannot

10

determine how much time was spent on these non-compensable tasks it imposes a 5% reduction in Winfrey's work hours.[1]

The Court finds that the entries identified by Defendant were not clearly excessive or unreasonable. It agrees that some of the identified entries represent work that should have been done by an associate or paralegal. The Court will not strike those hours because the reasonable hourly rate reflects the nature of Winfrey's work.

C.  **Upward Adjustment**

Plaintiff asks the Court to consider an upward adjustment to the fee award based on the "excellent" results obtained at trial, the quality of representation, and the "complicated" facts of the case. That request is not well taken. This case is not rare or exceptional. See Geier, 372 F.3d at 793. Plaintiff's reasons for an upward adjustment are presumptively reflected in the lodestar calculation. See Blum, 465 U.S. at 898-900 (finding that novelty/complexity, quality of representation, and results obtained are generally subsumed in other factors used to calculate a reasonable fee); Geier, 372 F.3d at 793-95. The results obtained were good given the legal limit for damages. Plaintiff asked for $1,000,000 in damages and received $50,000

---

[1] Defendant has not asked the Court to reduce Winfrey's travel hours. Winfrey billed three (3) hours for trips to and from Memphis even when he performed no work during the trip. The Court will not apply the 5% reduction to Winfrey's travel hours.

11

after the Court imposed the statutory cap.[2] Winfrey's representation was effective, but does not merit an upward adjustment. The claims and facts of the case were not overly complicated. The request for an upward adjustment is denied.

### D. Calculation of Reasonable Attorney's Fees

The Court applies a $400 reasonable hourly rate to Winfrey's work hours and a $200 hourly rate to Winfrey's travel hours.[3] It applies a 5% reduction to Winfrey's work hours, resulting in a total of 559.1 work hours and 24.0 travel hours. The Court awards $228,430 in reasonable attorney's fees.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion is **GRANTED IN PART**.

So ordered this 29th day of September, 2021.

/s/ Samuel H. May, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

---

[2] The Court has considered whether a downward adjustment would be appropriate based on the disparity between the requested fees and the results obtained. Other courts have approved requested fees where the ratio between fees and damages obtained was similar to or greater than the ratio in the current case. See Fegley v. Higgins, 19 F.3d 1126, 1130 (6th Cir. 1994) (upholding fee award that represented a 5:1 ratio to damages, but reversing and remanding for consideration of additional damages and attorney's fees); Wheat v. Benton Cty., No. 1:08-CV-01171, 2010 WL 908653 (W.D. Tenn. Feb. 10, 2010)(approving fees that represented a 12:1 ratio to damages). A downward adjustment based on damages obtained would not be appropriate on this record.

[3] Winfrey billed travel hours at half his normal rate. The Court applies the same rule to the reasonable hourly rate.